Roman Gnoj et al., as Executors of Dmytro Kuzmyn, Deceased, Respondents, *v.* City of New York, Appellant.

First Department, March 21, 1968.

*Frederic S. Nathan* of counsel (*William A. Marks* and *David G. Trager* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for appellant.

*Richard E. Shandell* of counsel (*Fuchsberg & Fuchsberg,* attorneys), for respondents.

McNALLY, J. Plaintiff, age 65, since deceased, recovered a verdict of $135,000 in this action for personal injuries. The basic malpractice claim is negligence in failing to ascertain that plaintiff was suffering from renal tuberculosis. The deceased was employed at Bellevue Hospital since 1952 as a kitchen worker. He was admitted as a patient in said hospital in 1955, at which time he was suffering from pulmonary tuberculosis. He was readmitted at the Urology Clinic of the hospital in 1958 after complaints of pain in the right flank and dysuria. There were other admissions and procedures but it was not until in or about July, 1961 that the diagnosis of renal tuberculosis was made. The last hospital treatment was during December, 1962. A notice of claim was filed with defendant on January 9, 1963.

Defendant-appellant argues: (1) the notice of claim was untimely because not made within 90 days after the claim arose (General Municipal Law, § 50-e, subd. 1); (2) error in failing to strike the testimony in behalf of plaintiff of a medical expert originally retained by defendant to examine plaintiff's hospital records and to report to defendant in the course of the preparation of the defense of this case; and (3) the verdict is excessive.

Defendant concedes the evidence of malpractice presented a jury issue. The timeliness of the notice of claim rests on the continuity of plaintiff's treatment for his physical condition which arose in 1958 and continued thereafter until his last treatment in December, 1962, which is a jury question. The Statute of Limitations begins to run from the date of the final treatment provided that treatment is continuous from the time of the incident of malpractice (*Borgia* v. *City of New York,* 12 N Y 2d 151). Neither side specifically requested that this issue be submitted to the jury. We conclude, however, that the verdict is grossly excessive. In addition, substantial and prejudicial error in the refusal to strike expert medical testimony adduced by plaintiff on liability requires a new trial in the interests of justice.

Dr. Wershub was retained by defendant as a medical expert to review the hospital records and to render an opinion as to whether the hospital negligently failed to diagnose plaintiff's renal tuberculosis in 1958. Dr. Wershub, called by plaintiff, was preceded by Dr. Swersie, a medical expert, who testified in his opinion the failure to diagnose plaintiff's condition as renal tuberculosis was the product of the hospital's failure to follow generally accepted diagnostic procedures. Dr. Wershub's testimony, therefore, was not essential to plaintiff's proof of malpractice; it was clearly cumulative. We are not called upon to decide whether the cumulative expert testimony

may have been objectionable per se; it was, however, grossly improper when its effect was to convey to the jury that defendant's expert had resolved the issue of negligence against the defendant. This was the necessary, if not intended, effect of the testimony of Dr. Wershub elicited by plaintiff that he had been retained by defendant to review the hospital records and had rendered his report to defendant with his opinion that the failure to make the diagnosis of renal tuberculosis in 1958 resulted from the hospital's failure to follow customary procedures.

Dr. Wershub's report to defendant was made available to plaintiff's attorneys by direction of the court, other than the trial court, during a pretrial conference presumably in an attempt to effectuate a settlement, and thus was not voluntarily given. The Trial Justice was thus in error in holding that the exchange of reports was voluntary. The following appears in the record:

" It appears that a copy of Dr. Wershub's report at one time was given to the attorneys for the plaintiff in this case, during a pre-trial conference.

" The Court: By whom? At the direction of whom?

" Mr. Kohn: At the direction of Judge Frank, and this was done for the purpose of trying to effectuate a settlement in this case at that pre-trial conference.

" No settlement was effected, and the City maintains that the communication, that the report, which was given to the plaintiff's attorney, is privileged and remains a privileged communication between the doctor and The City of New York and is a work product of The City of New York, which the doctor had no right to divulge or to discuss with the plaintiff's attorney in any way, nor to give voluntary testimony thereof at the trial without — especially without being subpœnaed in the case, and where he says he appeared, and he expected to get paid by the plaintiff's attorney for his testimony."

This statement is not challenged and in fact a reading of the record makes it apparent that the report was given over by direction of the pretrial court with a view to a pretrial settlement and for no other reason.

The said report is not within the ambit of rule XI of the Rules of the Supreme Court of New York and Bronx Counties for Exchange of Medical Information. Rule XI is inapplicable to actions for medical malpractice.

Dr. Wershub's report is not in evidence and he testified voluntarily as plaintiff's expert witness. (Cf. *McDermott* v. *Manhattan Eye, Ear & Throat Hosp.,* 15 N Y 2d 20, 29; *People*

*ex rel. Kraushaar Bros. & Co.* v. *Thorpe,* 296 N. Y. 222.) He was a voluntary witness who had received compensation from defendant and expected compensation from plaintiff. The testimony of Dr. Wershub should have been stricken by the Trial Justice in the exercise of discretion. Where a party, as in the instant case, does not lack expert testimony of his own choosing, an expert engaged by the opposing party should not be sought out and placed in the unethical position of accepting a retainer from both sides. (*Gugliano* v. *Levi,* 24 A D 2d 591; *Matter of City of New York* [*Brooklyn Bridge Southwest Urban Renewal Project*], 50 Misc 2d 478, 481; *Ramacorti* v. *Boston Redevelopment Auth.,* 341 Mass. 377, 379.) We hold Dr. Wershub's testimony should not have been tendered by plaintiff to the jury, especially under circumstances as in the case at bar suggesting or implying that defendant authorized or is bound by his opinion.

The judgment should be reversed, on the law and on the facts and in the interests of justice, and a new trial directed, with costs to abide the event.

CAPOZZOLI, J. (dissenting). I disagree with the conclusion reached by the majority.

It is to be noted that Dr. Wershub's testimony on direct examination covers seven full pages of the record. Although a number of objections were made by defendant's trial counsel as to some of the questions asked of Dr. Wershub, at no time did defendant's trial counsel object upon the ground that Dr. Wershub was the city's expert and, therefore, should not be questioned. As a matter of fact, it is also interesting to note that, in the defendant's main brief on this appeal, no question was raised as to the propriety of allowing Dr. Wershub to testify. It was after the plaintiff's answering brief was received that the defendant, in its reply brief, for the first time raised the argument that the testimony was a violation of the work product privilege and, therefore, should not have been admitted.

Throughout his direct testimony Dr. Wershub made very clear that there had been neglect on the part of the defendant in the manner in which the plaintiff had been treated. When defendant's counsel evidently realized that the testimony of Dr. Wershub was damaging to the defendant's case, then he objected to any reference to the contents of the report which Dr. Wershub had previously sent to the City, but not even then did he object to the testimony of the doctor, the objection was limited to what the report contained.

It appears to me that Dr. Wershub's report to the defendant was given to the plaintiff's counsel voluntarily. There is no

suggestion, much less any contention, by the defendant that the report was given as a result of pressure by the pretrial court and against defendant's will.

On the day following Dr. Wershub's testimony, trial counsel for the city, in the absence of the jury, made the following statement to the court: "Under the rules, exchange of medical testimony is not required in a malpractice case. So any testimony we gave them we gave voluntarily for the purposes of effecting a settlement at pre-trial. Whether he gave us a copy of his own medical report is entirely immaterial." Later, defendant's counsel said: " So I will make a statement apologizing for acting the way I did and say to that effect I am not trying to impugn the integrity of the attorneys in this case with regard to this report."

The jury was then recalled and, in their presence, defendant's counsel made the following statement:

" May it please the court, if the court recalls, yesterday, when Dr. Wershub took the stand there was a big to do—I made a big to do about him testifying about a report he gave to The City of New York, and it seems that—I went back to the office and checked on it yesterday, and it seems that there was a time in the past that The City of New York did exhibit, gave a copy of Dr. Wershub's report to the plaintiff's attorney.

"Now that we did it at a previous time, and so there is no intimation here that anything was meant, that the attorney did anything wrong as far as that is concerned. * * * I do not intend to impugn the integrity of the attorneys for the plaintiff.

" The Court: There was nothing improper on their account in any manner whatsoever?

[Defendant's counsel]: Nothing improper."

The attack made by the defendant's counsel against both Dr. Wershub and plaintiff's counsel on the day before he made his apologies was harsh, unjust and completely unwarranted on the basis of the factual situation. The first question that was asked of Dr. Wershub, on cross-examination by defendant's counsel, was the following: " Q. Doctor, how much did you get paid to sell this report to the plaintiff's attorney? " Later Dr. Wershub testified: " Your Honor, I never gave them a copy. They supplied the copy to the counsel."

Plaintiff's trial counsel, Mr. Shandell, made the following statement: "He never mailed a report to me. I only have a copy of his report to you [defendant], which was furnished to me in pre-trial proceedings in this case. Why do you insinuate otherwise? "

It is significant that, on the question of the propriety of the doctor's ethical behavior, only one witness testified under oath as to what the arrangement between Doctor Wershub and the city was when the doctor was consulted as a medical expert. Dr. Wershub testified: "Well, on behalf of myself, I notify the Corporation Counsel that any time I testify for them or review a case for them, it's impartial and subject to anybody's review." No one challenged the truthfulness of this statement, and when one considers the standing of this witness in his profession, a professor of urology at New York Medical College, etc., his independent attitude can well be understood.

I have reviewed the cases cited in the majority opinion. The only one which has any bearing on the legal principle at issue in the case at bar, is the case of *Gugliano* v. *Levi* (24 A D 2d 591). An examination of the record in that case discloses that the factual situation is completely different. The plaintiff was never given a copy of the medical report by the defendant, or on his behalf, willingly or otherwise. The plaintiff subpœnaed the defendant's doctor and called him to the stand as his witness. As soon as the doctor was sworn, and before being asked any questions, defendant's trial counsel immediately moved that the doctor's testimony be excluded on the ground that the relationship of the doctor and defendant's attorney was a confidential one and on the further ground " that he has acted on behalf of the office with respect to reviewing files, that his work product is the work product of the attorneys and not properly subject to subpœna ". (*Gugliano* v. *Levi, supra*, trial record, p. 285.) This motion was denied and the doctor then testified at length and, while on the stand, was compelled to produce the report that he had made to the attorney for the defendant prior to the trial. Can it seriously be suggested that the facts in the case at bar are similar? There is no suggestion, in the present case, much less any contention, by the defendant that the report was given as a result of pressure by the pretrial court and against its will.

It is important to note that the defendant does not challenge the evidentiary sufficiency for the finding of malpractice in the court below. Nor is it suggested that any of the testimony of Dr. Wershub was untrue. It seems to me that, under all the circumstances, it was proper for plaintiff's counsel to adduce all pertinent and relevant evidence available, in the interests of justice. After all, the theory that a trial is a search for the truth and not a game is firmly entrenched in our law and a reversal of the judgment below, in view of the circumstances disclosed, is unwarranted.

Therefore, while I would have no objection to a reduction of the verdict, I do dissent from a reversal *in toto*.

STEUER, J. P., McGIVERN and RABIN, JJ., concur with McNALLY, J.; CAPOZZOLI, J., dissents in opinion.

Judgment reversed upon the law, upon the facts and in the interests of justice, and a new trial ordered, with $50 costs to abide the result of the final judgment in the action.